## NATIONAL LABOR RELATIONS BOARD v. HOPWOOD RETINNING CO., Inc., et al.

Circuit Court of Appeals, Second Circuit.
June 6, 1939.

Charles Fahy, Gen. Counsel, of Washington, D. C., for National Labor Relations Board.

Daniel J. Byrne, of Ridgewood, N. Y., for respondents Hopwood Retinning Co., Inc., and John A. Hopwood.

Milton M. Siegel, of New York City (Kotzen, Mann & Siegel, of New York City, of counsel), for respondent Monarch Retinning Co., Inc.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is a motion by the National Labor Relations Board that the respondents be adjudged in contempt of this court for their failure to comply with its order dated July 26, 1938, wherein enforcement of an order of the Labor Board made with respect to the parties hereto was directed, pursuant to an opinion rendered July 12, 1938. The opinion is reported in National Labor Relations Board v. Hopwood Retinning Co., Inc., et al., 2 Cir., 98 F.2d 97.

The order of the Labor Board, made on January 15, 1938, directed the Hopwood Retinning Co., Inc., and the Monarch Retinning Co., Inc., to cease and desist from unfair labor practices and affirmatively to reinstate employees locked out on March 31, 1937, and to pay them for wages lost, to bargain collectively with two unions representing separate units of employees, to notify the employees that individual contracts with them would be discontinued and not enforced, and to post appropriate notices. The order of this court sustained the Board's findings and incorporated in it the Board's order so far as the Hopwood Company was concerned. With respect to the Monarch Company, which was a company organized on April 15, 1937, after this labor dispute had arisen, to take over and carry on the Hopwood Company's business of collecting, reconditioning, and distributing milk and ice cream containers, this court sustained the Board's finding that its establishment "was an attempt on the part of Hopwood to evade its duty of collective bargaining," and that it was "but the alter ego of the Hopwood Co., operated for its benefit, and controlled by it." Since, however, the Monarch Company was not named in the original complaint issued by the Regional Director of the Board, but was only brought into the proceedings by amendment allowed by the trial examiner during the course of the hearings, it was ruled that this company could not be a party against whom the order should be entered, for lack of proper initiation of the complaint against it, as required by the National Labor Relations Act and the rules of the Board. The court did hold, however, that it could and would regard the Monarch "as an agency or instrumentality used to further the purposes of Hopwood's lock-out"; and, while vacating the order as against Monarch, it specifically provided in its order against the Hopwood Company that it, "its officers, agents, successors, and assigns, abide by and perform each and all of the directions contained in said order as so modified, and that said respondent, where necessary to accomplish the carrying out of the provisions thereof, shall secure the coöperation of its agent, Monarch Retinning Company, Inc."

Respondents attempted to obtain a resettlement of this order, but their motion to this end was denied.

In this proceeding the Board asserts that the order of this court has been in no manner complied with and asks that adjudications of contempt be made against the Hopwood Company, and against its officers and agents, and particularly John A. Hopwood, its president and controlling stock owner. It likewise asks such an adjudication against the Monarch Company, its officers and agents. Supporting affidavits are presented from officials and attorneys of the Board's Second Region located in New York, from officials of the unions involved, and from twelve production employees, drivers, and helpers, all of which are to the effect that except for certain negotiations for settlement terminating on December 20, 1938, on the rejection of an inconsequential offer of settlement from respondents, there has been no compliance by respondents with the court's order. The offer was to pay $1,500 in full settlement of the wages ordered paid, although a sum in excess of $200,000 is asserted to be due, and to reinstate ten production employees and three truck drivers and helpers, although of these two classes of employees, 191 and 17 respectively were originally discharged and thus entitled to reinstatement and approximately 100 and 12 respectively are desirous of such action.

In opposition to this motion, respondents have filed certain formal denials, as well as their motions to dismiss the proceedings because of claimed defects of

form and substance in them. They present the supporting affidavits of John A. Hopwood, president of the Hopwood Company; of Daniel J. Byrne, president of the Monarch Company, as well as attorney for the Hopwood Company and for John A. Hopwood; and of Milton M. Siegel, attorney for the Monarch Company. On their face these affidavits show that the adjudication of contempt must be made. Interspersed in these lengthy and verbose documents among argumentative, if not contemptuous, attacks upon the underlying law, the Board, and even this court (in assault upon the "intricacies" and the "ambiguities" of the order, which they assert the Board in some way forced upon this court), there are admissions which show that no real compliance with the order has been attempted or is now contemplated by the respondents. In the affidavits of Byrne and Siegel it is admitted that an offer of only $1,500 was made for wages due, and in the affidavit by Byrne, in the course of an attempt to excuse John A. Hopwood from having failed to secure the coöperation of the Monarch Company as required by the order, it is stated that, in response to his entreaties for their action, "we proffered such assistance as we could render in the matter, but only to the extent that the business of the Monarch Company be not affected to its detriment." A studied attempt is made to excuse the default by claimed ambiguities in the order or defects in the manner in which this proceeding was initiated and particularly by reason of the vacating of the order against the Monarch Company.

■ We do not believe this action of the court in finding a procedural defect in the proceedings against the Monarch Company, while at the same time it sustained the finding that the Monarch was but the agent or means whereby the Hopwood Company attempted to evade its responsibilities to its men in the premises, affords a loophole whereby the respondents can avoid compliance with the court's order. The finding as to the Monarch Company was quite explicit. Thus the court said, in reaching its conclusions stated above that the Monarch Company was but the alter ego of the Hopwood Company: "Monarch was formed on April 15, 1937, by the persons in control of Hopwood. Its machinery and equipment and about 12 trucks were transferred to New Jersey at a cost charged to the account of Monarch; and

on the date of the hearing it had paid only $2,000 on account. The capital stock of Monarch consisted of twenty no par value shares, nine (9) of which were held by the attorney for Hopwood, who was its president, ten (10) by a vice president of Hopwood, and one (1) by an employee of the attorney. The president of Hopwood and members of its staff supervised the installation of machinery. The materials used by Monarch were paid for by Hopwood although charged to the account of Monarch. Hopwood continued its existence, functioning as the exclusive sales agency for Monarch. The record does not disclose that Monarch owned any other assets or had any other business operations. A vice president of Hopwood, although paid solely by it, spends about half his time working for Monarch, as do other officers."

The affidavits of its president and its attorney show that the Monarch Company was thoroughly cognizant of all the prior proceedings—in which also the Monarch president acted as counsel for the Hopwood Company—and that it was attempting to make use of its omission as a formal party from the order of this court as a justification for its non-compliance therewith further than to the extent that its business should "be not affected to its detriment." They show, too, that it is the party which is now assuming the responsibility for not rehiring the discharged employees; that is, though it has taken over the Hopwood Company's business, it intends to avoid the latter's obligation to the workmen. Since the original order directed compliance by the Hopwood Company and its officers, agents, successors, and assigns, and since its agent, the Monarch Company, is preventing the enforcement of the order, that agent, too, should be adjudged in contempt. Indeed, the Monarch president and Hopwood attorney, Byrne, appears to be also a direct participant in the contempt, though consideration whether any order should be made against him individually may well await the report of the master to be appointed herein.

■ So far as John A. Hopwood, the president and principal owner of the Hopwood Company and the man practically responsible for the conduct of the affairs of these companies, is concerned, it seems clear, as indeed his own affidavit discloses, that the ultimate responsibility for this unfortunate labor situation is largely, if not solely, his.

It is well settled that "A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt." Wilson v. United States, 221 U. S. 361, 376, 31 S.Ct. 538, 543, '55 L.Ed. 771, Ann.Cas.1912D, 558. As an important officer and agent of the Hopwood Company, Hopwood should be held for his company's non-compliance with the court's order.

Other objections made to this proceeding are not substantial. In large measure they arise out of the claim that it is to be or may be considered one for criminal contempt. It is clear, however, that, since its purpose is wholly remedial, the proceeding is one for civil contempt. "While particular acts do not always readily lend themselves to classification as civil or criminal contempts, a contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public." McCrone v. United States, 59 S.Ct. 685, 686, 83 L.Ed. —, April 17, 1939, and cases there cited.

As a proceeding for civil contempt, this is therefore properly a continuance of the earlier action in this court and is a step in the enforcement of our previous judgment. Hence it was correctly instituted by motion served upon the counsel appearing for the parties in the record. Compare McCann v. New York Stock Exchange, 2 Cir., 80 F.2d 211, certiorari denied 299 U.S. 603, 57 S.Ct. 233, 81 L.Ed. 444; Federal Trade Commission v. Hoboken White Lead & Color Works, 2 Cir., 67 F.2d 551; and Rule 5 (b). Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, providing for service of notice upon the attorneys of the parties. The order of this court is in any event not void, because it incorporates by reference the provisions of the order of the Board. Lawrence v. St. Louis-San Francisco R. Co., 274 U.S. 588, 591, 47 S.Ct. 720, 71 L.Ed. 1219; Larkin Packer Co. v. Hinderliter Tool Co., 10 Cir., 60 F.2d 491,

494. The Board's order is in a form now usual in these cases and was sufficiently explicit for the parties to understand, as indeed their affidavits show. Finally, the McCrone case, cited above, settles the law that a governmental agency may sponsor civil contempt proceedings.

The National Labor Relations Act commits the enforcement of the orders of the Labor Board to the various circuit courts of appeals of the United States. Act of July 5, 1935, c. 372, § 10(e), 49 Stat. 453, 29 U.S.C.A. § 160(e). This court accepted the responsibility when it passed its order of July 26, 1938. For more than two years these respondents, as adjudged in proceedings found to be fair and legal, have been violating the law of the land as to their employees. The affidavits of their responsible officers indicate their purpose to continue to do so. We feel that such a course of conduct calls for summary judicial action.

An order will be entered adjudicating John A. Hopwood, the Hopwood Retinning Co., Inc., and the Monarch Retinning Co., Inc., in contempt of the order of this court of July 26, 1938, and the proceedings will be referred to Walter H. Pollak, Esquire, of New York City, as special master, to make findings and file his report, after due hearing. Such report shall find (1) the persons entitled to and now desirous of reinstatement as employees of either the Hopwood or the Monarch Companies, together with any facts (except the employment of other workers) which may show that work conditions do not justify the immediate employment of all of such employees or that they refuse to accept such employment except on conditions not contained in the prior order of this court; and (2) the amount of wages to which discharged employees may be entitled and the persons so entitled; and it may contain such other findings and such recommendations as the master may deem desirable to enable this court to enter its final decree of commitment of persons or levy upon property or both, as may then be adjudged appropriate.

Petitioner's motion granted with reference to a master; respondents' motions denied.