## NATIONAL LABOR RELATIONS BOARD v. LIGHTNER PUB. CORPORATION OF ILLINOIS.

### No. 7164.

Circuit Court of Appeals, Seventh Circuit.
May 6, 1942.

238

Robert B. Watts and Leslie Clifford, both of Washington, D. C., for petitioner.

O. C. Lightner, of Chicago, Ill., pro se.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

On March 31, 1941 the National Labor Relations Board filed its petition to have the Lightner Publishing Corporation of Illinois and O. C. Lightner, its president, adjudged in contempt of court for failure to obey the decree of this court entered on August 5, 1940.[1] We referred the cause to a special master, who heard testimony and submitted his report.

The master found that respondent and O. C. Lightner have violated paragraphs 1(c), 2(b), and 2(c) of this court's decree[2] in the following matters:

1. By failing to make any payment for net loss of wages to Behnke, Leach, Fedor,

[1] See National Labor Relations Board v. Lightner Publishing Corporation of Illinois, 7 Cir., 113 F.2d 621.

[2] The pertinent sections of this decree are as follows:

"It is hereby ordered, adjudged . and decreed that Lightner Publishing Corporation of Illinois, and its officers, agents, successors and assigns, shall:

"1. Cease and desist from:

"(a) * * *

"(b) * * *

"(c) In any other manner interfering with, restraining, or coercing its employees in the exercise of their right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purposes of collective bargaining and other mutual aid and protection, as guaranteed in Section 7 of the Act.

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

"(a) * * *

"(b) Upon application, offer to its employees who were out on strike on October 25, 1937, and thereafter, immediate

Dagostino, Voelz, and Kiebler, all of whom were employed by respondent prior to the strike and who were out on strike on October 25, 1937.

2. By failing to reinstate Fedor upon his application of December 9, 1940, and failing to recall him from his discharge of January 31, 1941.

3. By failing to retain Voelz from December 28, 1940, two days after his reinstatement, to January 20, 1941.

4. By failing to reinstate Kiebler.

█ We agree with these conclusions of the master except those relating to Fedor and Kiebler.

The Board's order was issued on May 26, 1939. On June 5, Behnke, Leach and Fedor, through their representatives, applied for reinstatement. On June 25, Voelz, Dagostino and Kiebler likewise applied for reinstatement. Not one of these was, at these times, reinstated. On December 9, 1940, after the decree of this court of August 5, 1940, these six men again applied for reinstatement. Behnke and Leach were offered reinstatement on December 13, 1940 and December 14, 1940, respectively, and were actually reinstated on December 18, 1940. Dagostino was offered reinstatement on December 16, 1940, but he declined the offer.

There is no excuse for the failure to make these three employees whole for their net loss of wages from five days after the time of their respective applications in June, 1939 to the time of the offers of reinstatement. Respondent's contention that this court did not order that the striking employees be made whole for net loss of wages is utterly without foundation.

█ Respondent has contended also that a proper application for reinstatement is not made unless the person seeking employment appears at the place of business with his tools, ready to begin work. The contention is unsound. An application for work may be made personally or through an agent in any manner which reasonably

---

and full reinstatement to their former or substantially equivalent positions, without prejudice to their seniority and other rights and privileges, in the manner set forth in the decision of the Board,* placing those employees for whom employment is not immediately available upon a preferential list in the manner set forth in the footnote below, and thereafter, in said manner, offer them employment as it becomes available;

"(c) Make whole the employees ordered to be offered reinstatement for any loss of pay they will have suffered by reason of the respondent's refusal to reinstate them upon application, following the issuance of the Board's order, by payment to them, respectively, of a sum of money equal to that which each would normally have earned as wages during the period from five (5) days after the date of such application for reinstatement to the date of the offer of employment or placement upon the preferential list required by paragraph (b) above, less his net earnings during that period; deducting, however, from the amount otherwise due to each of said employees, monies received by said employees during said period for work performed upon Federal, State, county, municipal, or other government or governments which supplied the funds for said work-relief projects, and pay over the amount so deducted to the appropriate fiscal agency of the Federal, State, county, municipal, or other government or governments which supplied the funds for such work-relief project;

"(d) * * *

"(e) * * *"

---

* In accordance with the decision of the Board as modified by the opinion of the Court herein, all employees hired after October 25, 1937, when the respondent began its unfair labor practices, shall, if necessary to provide employment for those to be offered reinstatement, be dismissed. If, thereupon, by reason of a reduction in force there is not sufficient employment immediately available for the remaining employees, including those to be offered reinstatement, all available positions shall be distributed among such remaining employees in accordance with the respondent's usual method of reducing its force, without discrimination against any employee because of his union affiliation or activities, following a system of seniority to such extent as has heretofore been applied in the conduct of the respondent's business. Those employees remaining after such distribution, for whom no employment is immediately available, shall be placed upon a preferential list prepared in accordance with the principles set forth in the previous sentence, and shall thereafter, in accordance with such list, be offered employment in their former or in substantially equivalent positions, as such employment becomes available and before other persons are hired for such work."

brings notice of the application to the employer.

At the time of the strike, John Fedor was employed as a pressman. On December 26, 1940 he was offered reinstatement. On December 30, 1940 he was reinstated as a feeder, an assistant to a pressman, but at a pressman's wages, which exceeded the wages of a feeder. He continued working in this position until January 31, 1941, when he was discharged.

The master found that Fedor was discharged without cause; that other feeders, not employed at the time of the strike, were retained; that a new feeder was hired to replace Fedor; that Fedor's former position as pressman was held by one Umphress, not employed at the time of the strike; that Umphress was also foreman of the pressroom; and that Fedor is entitled to be made whole for loss of wages from June 10, 1939 to December 26, 1940, and from January 31, 1941 until he is offered reinstatement.

Except for the findings that Fedor was discharged without cause and that he is entitled to be made whole for any loss of wages, we agree with the master's findings as far as they go. We disagree with the master's conclusion that respondent and O. C. Lightner violated our decree by failing to reinstate Fedor sooner than they did and by failing to recall Fedor from his discharge of January 31, 1941.

Our disagreement is based upon the following reasons which justify any failure to reinstate Fedor. At the time Fedor was discharged, respondent had in his employ two pressmen. One was Behnke, who had been employed before the strike and who was out on strike on October 25, 1937. There is no contention that Behnke should have been replaced by Fedor. The other pressman was Umphress, who not only performed the duties of a pressman, but was also foreman of the pressroom. Fedor had not been a foreman. We cannot reasonably say that Umphress took Fedor's position and should have been discharged in place of Fedor. Neither can we say that respondent was obliged to hire or to retain a feeder at a pressman's wages. Regardless of what other feeders were employed at feeder's wages, Fedor's discharge did not violate our decree. In fact, under the circumstances, respondent was under no obligation to reinstate Fedor.

■ There is no evidence as to what pressmen were employed from June 10, 1939 to December 26, 1940 or as to whether Fedor was placed upon a preferential list, and we shall not presume that respondent and O. C. Lightner violated our decree in not reinstating Fedor within that period.

Voelz, originally employed as a compositor, was offered reinstatement December 16, 1940, effective December 20, 1940. Since he was temporarily employed elsewhere and since he would put his temporary employer "in a bad spot" if he left his employ immediately, Voelz did not report to respondent for work until December 26, 1940, at which time he resumed employment. Two days later he was discharged without cause, but at the instance of the Board he was reinstated on January 20, 1941. On February 24, 1941 he voluntarily terminated the employment. At the time of his discharge on December 28, two compositors and three linotype operators, none of whom had been employed before October 25, 1938, were in the employ of respondent. We approve the master's finding that Voelz's discharge was in violation of our decree and that he is entitled to be made whole for his loss of wages from June 30, 1939 to December 16, 1940, and from December 28, 1940 to January 20, 1941.

■ Lightner's contention that Voelz forfeited his right to employment by not appearing for work when it was offered to him is not meritorious. The short delay of six days, a delay due to Voelz's commendable consideration for his employer, is insufficient under the circumstances to constitute a forfeiture of his rights.

Kiebler was employed by the respondent before the strike as superintendent of the whole shop at a wage of fifty-eight dollars a week. In addition to being an expert in registering color forms, Kiebler was capable of discharging the duties of any other employee and at times performed the duties of other employees. Kiebler has not been offered reinstatement or paid for any loss of wages. The master found that there was no sufficient reason for not reinstating Kiebler and that the latter is entitled to be made whole for net loss of wages from June 30, 1939 to the date he is offered reinstatement. We do not agree.

Uncontroverted evidence shows that the color work done by Kiebler was no longer needed after the strike, owing to a loss of the business which required it. Kiebler did not always do this color work for respondent, and when he began to do it he was paid a higher wage. It is also un-

disputed that respondent was forced by a loss of business to reduce its overhead. Respondent contends that Kiebler's position was never filled because it could not afford such an "expensive superintendent." The evidence supporting respondent's contention is not affected by evidence that in general one Dortsch, foreman of the composition room, took over Kiebler's duties. There is no evidence that Dortsch possessed Kiebler's ability, that he was worth as much in wages, or that he was paid as much.

■ Certainly an employer may not be required to reinstate an employee in a position which, because of a loss of business, no longer exists. Especially is this proposition true when the loss of business was caused by a strike for which the employer was no more responsible than were the employees.[3]

■ We hold that respondent and O.C. Lightner were under no obligation to reinstate Kiebler and that he is entitled to no payment for loss of wages. As far as Kiebler's placement on a preferential list is concerned, we adhere to our views hereinabove expressed in relation to Fedor.

The failure to make whole Behnke, Voelz, Leach, and Dagostino for their net loss of wages constitutes a violation of paragraph 2(c) of our decree.

■ The master found that respondent and O. C. Lightner complied with paragraph 2(b) of the decree by offering immediate and full reinstatement to Behnke, Leach, and Dagostino upon their respective applications of December 9, 1940. If the word "application" in paragraph 2(b) is construed to mean an application following the issuance of this court's decree, the master's conclusion is correct. The word "immediate" must be given a reasonable construction. National Labor Relations Board v. Giannasca, 2 Cir., 119 F.2d 756, 135 A.L.R. 560.

■■ However, we believe that, considering paragraphs 2(b) and 2(c) together, the word "application" in paragraph 2(b) must be construed to mean an application after the issuance of the Board's order. Otherwise, respondent and O. C. Lightner would be required to make whole the proper employees from five days after the date of their respective applications in June, 1939

to the date they were offered reinstatement or placed on a preferential list; and yet they would not be required to reinstate these employees until the employees made another application following the decree of this court. The decree should not be so construed as to lead to such an anomalous situation. Therefore, we hold that, respondent and O. C. Lightner violated paragraph 2(b) of the decree in not offering full reinstatement to Behnke, Leach, Dagostino, and Voelz immediately upon the issuance of the decree, since the application mentioned in the decree had previously been made.

The violations of paragraphs 2(b) and 2(c) constitute a violation of paragraph 1(c) of the decree.

■ Except as noted hereinabove, we approve the report of the master; and for their violations of paragraphs 1(c), 2(b) and 2(c) of the decree, we hold respondent and O. C. Lightner in contempt of this court. It is proper that Lightner as well as respondent be held in contempt of court. The respondent was ordered dissolved by action of its Board of Directors as of March 31, 1938, and O. C. Lightner was appointed to wind up its affairs. In such capacity, he has been in sole charge of the business of respondent. Prior to March 31, 1938, he was, at all times concerned, president of respondent. National Labor Relations Board v. Hopwood Retinning Co., 2 Cir., 104 F.2d 302, 304; Wilson v. United States, 221 U.S. 361, 376, 31 S.Ct. 538, 543, 55 L.Ed. 771, Ann.Cas.1912D, 558.

We shall order that respondent and O. C. Lightner, as liquidator of the respondent, within ten days pay to Behnke, Leach, Dagostino, and Voelz the amounts found by the master to be due to them; that they post appropriate notices in respondent's plant, pay the master and the reporter for their services, and file a sworn statement in this court within said ten days, showing compliance with this order; that upon their failure thus to purge themselves of contempt, a writ of attachment issue against the property of respondent and that such property be held and that O. C. Lightner be imprisoned until the amounts owed by them are paid or until further order of this court. Jurisdiction of this case will be retained to supervise the performance of and compliance with the decree entered in conformity with this opinion.

---

[3] See National Labor Relations Board v. Lightner Publishing Corp. of Illinois, ■■■ supra, footnote 1.