**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**VTR, INC., Defendant.**

**Civ. A. No. 190–73.**

United States District Court, District of Columbia.

Oct. 23, 1975.

Robert B. Blackburn, Atty., Securities and Exchange Commission, Washington, D. C., for plaintiff.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GASCH, District Judge.

*INTRODUCTION*

On August 26, 1975, the Securities and Exchange Commission filed an application for an order to show cause why VTR, Inc. (VTR) and David E. Jordan, VTR's president, should not be held in civil contempt of the Final Judgment of Permanent Injunction that was entered in this case by this Court on April 19, 1973. With the application the SEC filed a notice of motion and a motion for entry of an order holding VTR and Jordan in civil contempt of the April 19, 1973, injunction. On August 27, 1975, Judge Waddy of this Court, acting on the SEC's application in the capacity of motions judge for the month of August, issued to VTR and Jordan an order to show cause, returnable on September 17, 1975. On September 17 the scheduled

hearing took place before this Court, with only the SEC's attorneys appearing.

At the hearing the SEC orally restated its motion, and the Court declared VTR and Jordan in contempt. This decision rested on the SEC's motion papers and supporting affidavit, as well as on court records indicating that Judge Waddy's clerk had notified VTR and Jordan of the entry of the Order to Show Cause, and on information provided by the SEC's attorney, Mr. Robert B. Blackburn, as to the manner in which the show cause order had been served on VTR and Jordan. That information established that the U. S. Marshal had twice attempted to serve the show cause order and that on both occasions, according to the Marshal's notations on the service return form, a secretary at VTR had refused to take the papers, and on one occasion had refused to talk to the Marshal "face-to-face."[1] The Court directed the SEC to submit an appropriate order for signature.

Soon after the hearing and before any contempt order was signed, Judge Waddy's calendar clerk informed this Court that the show cause order had not been sent by mail to VTR and Jordan, as the Court had believed at the time of the hearing, but by Marshal only. In view of the questionable sufficiency of the service of the show cause order as attempted by the Marshal, the Court determined to withhold temporarily the issuance of the contempt order, and directed the SEC to submit points and authorities on the issue of the sufficiency of service of the necessary papers on VTR and Jordan. The SEC filed the requested memorandum on October 8, 1975, with supporting exhibits and affidavit. The Court now makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The Permanent Injunction issued in this case on April 19, 1973, directed VTR to file with the SEC certain overdue

---

1. See U. S. Marshal's Service Process Receipt and Return, Exhibits 1 and 2 to plaintiff's Memorandum filed October 8, 1975.

quarterly reports, annual reports and financial statements, and permanently enjoined VTR from failing to file timely and proper periodic and current reports as required by section 13(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78m(a), and the rules and regulations thereunder. The Injunction ran to "VTR, Inc., its officers, directors, agents, servants, employees, assigns, and successors, and those persons in active concert or participation with VTR." The Court issued the Injunction pursuant to the "Consent of Defendant to Entry of Final Judgment of Permanent Injunction," which had been executed on April 5, 1973, by Mr. Jordan at the direction of VTR's directors. Mr. Jordan was at that time, and still is, VTR's president. By the terms of the Injunction the Court retained jurisdiction over this case for purposes of ensuring compliance.

The affidavit and exhibits filed by plaintiff in support of its motion for a judgment of contempt demonstrate that VTR and Jordan have violated the terms of the Permanent Injunction by failing to file the following reports: (1) Annual 10K report for 1974, due on March 31, 1975; (2) quarterly 10Q reports for quarters ending March 31, 1975, and June 30, 1975, due on May 15, 1975, and August 14, 1975, respectively; (3) an amendment to the 1973 10K, as first requested by the SEC on January 30, 1975, to correct material deficiencies in the narrative section and financial statements attached to the 1973 10K. VTR has further violated the Injunction by filing late, on July 12, 1974, the Annual 10K report for 1973, which was due on March 31, 1974. The SEC has notified VTR and Jordan of the delinquency of these reports both by mail and by telephone. Neither VTR nor Jordan has made any attempt to explain VTR's delinquencies, either by appearing at the September 17 hearing or by filing a response to the SEC's motion for judgment of contempt.

■ Although the affidavit of Charles Lerner strongly implies that VTR, Jordan, and VTR's counsel of record received actual notice of the date of the hearing on the show cause order, neither the affidavit nor the record as a whole justifies a finding of actual notice of the hearing date. Mr. Lerner's affidavit states that Jordan and VTR's counsel each telephoned the affiant on September 2 to request a 60-day postponement of the hearing date, but the affidavit does not contain any indication that September 17 was expressly discussed as the date of hearing. The Application for a show cause order that was filed by the SEC with the Clerk of this Court states only that the hearing "should be scheduled for September ——, 1975 . . . . ." [sic]. Thus the Application mailed to VTR cannot be presumed to have given actual notice of the hearing date.

■ Despite the lack of proof of actual notice of the hearing date, the record does show that VTR, Jordan, and VTR's counsel of record were served by mail with the SEC's motion for judgment of contempt, the notice of motion, the supporting memorandum, exhibits and affidavit, and the application for show cause order. The certificates of service filed with those papers and signed by Mr. Phil Gross, SEC special trial counsel, state that he mailed all of them on August 26, 1975, addressed to "VTR, Inc., att. David E. Jordan, President," and to VTR's attorney of record, namely, Mr. William J. Davis of Schulman, Gasarch & Scheichet. In the affidavit filed on October 8, 1975, Mr. Gross avers that Messrs. Jordan and Davis both called him on September 2, 1975, to request postponement of the hearing on the contempt motion. These averments demonstrate that the motion papers and application for show cause order, which were mailed on August 26, were received by the addressees. Accordingly, VTR and Jordan must be presumed to have had actual notice of the filing of the motion. Moreover, the U. S. Marshal's inability to serve the order to show cause because of a VTR secretary's refusal to accept the papers [2] supports a presumption that VTR and Jor-

2. *Id.*

dan have intentionally avoided service of the Show Cause Order, knowing that the SEC had applied for such an order on August 26, 1975.

## CONCLUSIONS OF LAW

■ The Court need not decide at this time whether the Marshal's attempts to serve the Order to Show Cause on VTR and Jordan amounted to adequate service, for the SEC's motion for an order adjudging VTR and Jordan in contempt provides a sufficient basis for issuance of such an order even without prior service of a show cause order. This conclusion rests on Rule 7(b)(1), Federal Rules of Civil Procedure, which provides that "An application to the court for an order shall be by motion . . . ." Courts have consistently interpreted this rule as permitting motions and notices thereof to substitute for orders to show cause once the court has acquired in personam jurisdiction over the person to whom the motion is addressed.[3] If a motion is appropriate, service by mail on the party or the attorney of record is all that the Federal Rules require.[4] Service by mail is complete upon mailing.[5]

■ Service of the motion by mail on VTR and its attorney of record was clearly proper. In the Final Judgment of Permanent Injunction, this Court expressly retained jurisdiction over VTR and this lawsuit. Accordingly, by mailing the motion for an order adjudging VTR in contempt to VTR at its principal offices and to VTR's attorney of record, the SEC effectuated valid service on VTR.[6] Moreover, as established by the affidavit of Mr. Phil Gross, VTR, through its president, received actual notice of the motion. The fact that VTR may not have received actual notice of the date of the hearing does not suggest that the requirements of due process were not satisfied, for VTR could itself have requested a date convenient to it for the hearing or could at least have filed a response to the SEC's motion which put it on notice that action was sought. VTR's failure to avail itself of these opportunities does not alter the fact that it received "suitable notice and adequate opportunity to appear and be heard,"[7] which is all that due process requires.[8] Accordingly, the Court finds that VTR's failures to comply with the Permanent Injunction issued in 1973 amount to civil contempt of that Injunction.

As to Mr. Jordan, the fact that he was not named as a codefendant in the case against VTR clouds the issue of his susceptibility to a judgment of contempt. It might be argued that the Court never obtained in personam jurisdiction over Jordan and for this reason cannot hold Jordan in contempt unless he has been properly served with an order to show cause.

The Court recognizes that the preferable practice would have been for the SEC either to sue Mr. Jordan and VTR

---

**3.** See *In re Tracy,* 106 F.2d 96, 98 (2d Cir. 1939) (Clark, J., concurring); *N.L.R.B. v. Hopwood Retinning Co.,* 104 F.2d 302, 305 (2d Cir. 1939); *Walling v. Moore Milling Co.,* 62 F.Supp. 378, 382 (W.D.Va.1945); *Tilghman v. Tilghman,* 57 F.Supp. 417, 418 (D.D.C.1944); *United States v. Rollnick,* 33 F.Supp. 863, 865 (M.D.Pa.1940). In *Rollnick,* the Court stated that

Since the effective date of the New Rules of Civil Procedure, rules to show cause have not been properly a part of civil practice. Rule 7(b) provides that all applications to the Court for orders shall be by motion. The rules and forms then clearly indicate that motions are brought before the court by means of a "notice of motion" which serves

the purpose of a rule to show cause and obviates the necessity for obtaining such a rule.

**4.** Fed.R.Civ.P. 5; see *Chagas v. United States,* 369 F.2d 643 (5th Cir. 1966); *N.L.R.B. v. Hopwood Retinning Co.,* 104 F.2d 302 (2d Cir. 1939); 2 *Moore's Federal Practice* ¶¶ 4.42[2], 5.06.

**5.** Fed.R.Civ.P. 5(b).

**6.** Compare *Chagas v. United States,* 369 F.2d 643 (5th Cir. 1966); *N.L.R.B. v. Hopwood Retinning Co.,* 104 F.2d 302 (2d Cir. 1939).

**7.** *Blackmer v. United States,* 284 U.S. 421, 440, 52 S.Ct. 252, 256, 76 L.Ed. 375, 384 (1932).

**8.** *Id.*

initially,[9] or to obtain service of the order to show cause on Mr. Jordan. However, on facts similar to those of this case, the Second Circuit in *National Labor Relations Board v. Hopwood Retinning Co.*,[10] held the president of the defendant company in contempt even though the president had apparently not been named in the original NLRB proceeding or the enforcement action in federal court.[11] As in this case, the Court's order in the initial enforcement proceeding had run to the company, "its officers, agents, [etc.]" [12] Moreover, the contempt proceedings had been initiated by motion served on the corporate defendant's attorney of record.[13] The Court held that the contempt proceeding against the company was a proper means of enforcing the prior judgment.[14] Although the corporate president in *Hopwood* demonstrated by filing papers in opposition to the contempt motion that he had actual notice thereof, Mr. Gross' affidavit also indicates in this case that Mr. Jordan had actual notice of this motion.

 Mr. Jordan has at all times been on notice of the Permanent Injunction entered by this Court in 1973. That Injunction was issued pursuant to a consent to judgment that was signed by Mr. Jordan himself. As president of VTR, Jordan is and has been an officer of VTR and therefore subject to the terms of the Final Injunction. The mailing of the motion for judgment of contempt to the attention of Mr. Jordan at his office address and to VTR's counsel of record constituted adequate service for purposes of this motion. Since Mr. Jordan received actual notice of these proceedings, the requirements of due process have

been met. Accordingly, Mr. Jordan will be held in contempt of the Final Injunction.

A further hearing will be scheduled in order to determine the sanctions to be imposed.

---

9. Compare *S.E.C. v. Naftalin*, 460 F.2d 471 (8th Cir. 1972).

10. 104 F.2d 302 (2d Cir. 1939).

11. See *id* at 303; see also *N.L.R.B. v. Hopwood Retinning Co.*, 98 F.2d 97, 98 (2d Cir. 1938).

12. 104 F.2d at 303. Ample authority exists for holding corporate officers in contempt for the company's violation of similarly directed injunctions. See *Aerovox Corp. v. Concourse Electric Co.*, 90 F.2d 615 (2d Cir. 1937); *S.E.C. v. Paradox Production Corp.*, CCH 1975 Fed. Sec.L.Rep. ¶ 94,939 (D.D.C.1975) (Gesell, J.); *Teele Soap Mfg. Co. v. Pine Tree Products Co.*, 8 F.Supp. 546 (D.N.H.1934).

13. 104 F.2d at 305.

