11-374-cv
FTC v. Bluehippo *et al.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

—————————————

August Term, 2011

(Argued: February 23, 2012                                   Decided: August 12, 2014)

Docket No. 11-374-cv

—————————————

FEDERAL TRADE COMMISSION,

*Plaintiff–Appellant*,

v.

BLUEHIPPO FUNDING, LLC, BLUEHIPPO CAPITAL, LLC, AND JOSEPH K. RENSIN,

*Defendants–Appellees*.[1]

—————————————

Before:
                              LEVAL, SACK, and HALL, *Circuit Judges*.

—————————————

The Federal Trade Commission ("FTC") appeals the damages portion of an order of the district court (Crotty, *J.*) granting, in part, the FTC's motion for contempt relating to defendants' violation of the Stipulated Final Judgment and Order of Permanent Injunction which enjoined the defendants from making any express or implied representations of material fact with respect to, *inter alia*, their store credit and refund policy. Arguing that it was entitled to a presumption that consumers relied, when deciding to purchase defendants' products, on defendants' omissions and misrepresentations, the FTC sought $14,062,627.51 in contempt damages, an amount equal to the defendants' gross receipts, i.e., the gross sales generated through its contumacious conduct. The district court's order is silent with regard to the presumption of reliance and plainly rejects the

---

[1] The Clerk of Court is directed to amend the official caption as noted above.

FTC's damages calculation. We agree with the FTC and join our sister circuits in adopting a presumption of consumer reliance in FTC civil contempt actions. Accordingly, we vacate the district court's order and remand for the district court to consider, in the first instance, whether the FTC has demonstrated that it is entitled to a presumption of consumer reliance. If so, the court should use defendants' gross receipts as a baseline for calculating the consumers' actual loss, and defendants should then be afforded an opportunity to proffer evidence showing that an offset of the baseline is warranted. Therefore, we VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.

————————————

DAVID C. SHONKA, SR., Deputy Chief Counsel (Michael D. Bergman, James A. Kohm, Robert S. Kaye, Amanda C. Basta, *on the brief*) *for* Lawrence DeMille-Wagman, Assistant General Counsel for Litigation, John F. Daly, Deputy General Counsel for Litigation, and Willard K. Tom, General Counsel, United States Federal Trade Commission, Washington, DC *for Plaintiff–Appellant.*

MARTIN S. HIMELES, JR. (John J. Connolly, *on the brief*) Zuckerman Spaeder LLP, Baltimore, MD *for Defendants–Appellees*.

————————————

HALL, *Circuit Judge*:

The Federal Trade Commission ("FTC") appeals the damages portion of a July 27, 2010 order of the District Court for the Southern District of New York (Paul A. Crotty, *Judge*) granting, in part, the FTC's motion for contempt relating to defendants-appellees' (BlueHippo Funding, LLC, BlueHippo Capital, LLC (collectively "BlueHippo"), and Joseph K. Rensin, the CEO of the BlueHippo entities) violation of a Stipulated Final Judgment and Order of Permanent Injunction (the "Consent Order"). The FTC and BlueHippo had previously entered into the Consent Order to resolve an action initiated by the FTC against BlueHippo for violating section 5(a) of the Federal Trade Commission Act, codified at 15 U.S.C. § 45(a) ("FTC Act"). The Consent Order enjoined the defendants from making any express or implied misrepresentations of material fact with respect to, *inter alia*, their store credit and refund policy.

2

In its contempt motion the FTC sought damages for BlueHippo's alleged violation of the Consent Order by failing to disclose, at the time of purchase, material details concerning BlueHippo's store credit policy. The FTC argued that it was entitled to a presumption that consumers relied, when deciding to purchase defendants' products, on defendants' omissions and misrepresentations. Accordingly, it sought $14,062,627.51 in contempt damages, an amount equal to the defendants' gross receipts, i.e., the gross sales generated through its contumacious conduct. The district court granted the FTC's motion for contempt, but awarded damages only with regard to consumers who complied with BlueHippo's payment requirements and thus qualified for but never received the promised computer. The court's order is silent with regard to the presumption of reliance and plainly rejects the FTC's damages calculation. The FTC filed a motion seeking an amendment or modification to the July 27 order to reflect the damages associated with all customer orders placed during the period of BlueHippo misrepresented or omitted information concerning its store credit and refund policy. The district court denied the motion and the FTC appealed.

## BACKGROUND

A.    The FTC's Preceding Direct Action

BlueHippo marketed computers and electronic products to consumers, regardless of their credit history. Prospective customers wishing to order a computer through BlueHippo would call a toll-free number, listen to a sales pitch, place their order, and provide relevant financial details. The premise of BlueHippo's sales pitch was if a customer made thirteen consecutive installment payments and signed an installment contract, BlueHippo would then ship a computer and allow the consumer to finance the remaining balance owed. If the customer skipped a payment, he or she would not qualify for financing but could continue to pay off the computer on a layaway program

3

or convert the previous payments to store credit for the purchase of other merchandise from BlueHippo's online store.

With respect to the store credit and refund policy (the conduct relevant to this appeal), at the time of purchase BlueHippo informed consumers that they were entitled to cash refunds within the initial seven-day period after placing an order, and after that customers could cancel their orders and obtain a store credit for BlueHippo's online store. However, when consumers agreed to purchase a computer and entered into an installment contract, BlueHippo failed to disclose that store credits could not be applied to shipping and handling fees or tax charges, or that only one online store order could be placed at a time. BlueHippo would not inform a consumer about these restrictions until the consumer attempted to make a purchase with store credit.

In February 2008, the FTC filed a complaint in the Southern District of New York against BlueHippo Funding LLC and BlueHippo Capital. The complaint alleged that BlueHippo, in its advertising, sales pitches, and representations to consumers, had engaged in persistent practices of deception since 2003 in violation of Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).[2] Pursuant to 15 U.S.C. § 53(b), the FTC sought permanent injunctive relief and disgorgement of the proceeds BlueHippo had obtained through these allegedly deceptive practices. In April 2008, the parties resolved the suit through entry of the Consent Order.

---

[2] The first count alleged that BlueHippo represented to consumers that it would ship products within a particular time frame when, in fact, these consumers did not receive the products purchased within the represented timeframe, if at all. The second count alleged that BlueHippo failed to disclose to consumers that payments made as part of a plan for the purchase of computers and electronics goods were nonrefundable, even if the consumer never received the purchased product. The complaint also alleged violations of the Mail Order Rule under regulations promulgated pursuant to the FTC Act, violations of the Truth in Lending Act and associated regulations, and violations of the Electronic Fund Transfer Act and associated regulations. These alleged violations are not at issue in the present appeal.

B.      The FTC's Contempt Action & the District Court's Contempt Ruling

Based on compliance materials provided by BlueHippo, the FTC moved in late 2009 for an order to show cause why both BlueHippo and its CEO, Joseph Rensin, should not be held in civil contempt for violation of the Consent Order.[3]   Based on its assertion that the FTC had violated the Consent Order, the FTC sought $14,062,627.51 in damages on behalf of 55,892 customers.[4]

On July 27, 2010, the district court issued a written ruling holding BlueHippo in contempt and finding that Rensin was jointly and severally liable for any damages.   The district court found that BlueHippo had violated the Consent Order through (1) failing to provide computers for 1348 orders within the promised three week time frame; (2) failing to provide either a computer or store credit merchandise for 677 orders; (3) failing to disclose details of the store credit policy to consumers; and (4) conditioning the extension of credit on mandatory preauthorized transfers.   It calculated damages in the amount of $609,856.38, basing this figure on the consumers who had qualified for BlueHippo's financing plan but had thereafter received neither a computer nor store credit.   Order Granting Plaintiff's Motion for Contempt at 10, *FTC v. BlueHippo,* No. 08cv-1819 (PAC), (S.D.N.Y. July 27, 2010), ECF No. 76.   As for BlueHippo's remaining violations, the

---

[3]   The Consent Order does not name Rensin as a party nor did he sign it on behalf of BlueHippo.   At the time of the contempt hearing, BlueHippo had filed for bankruptcy and the trustee declined to participate in the evidentiary hearing, relying on its written submission instead.   Rensin, however, presented his case to the district court in the evidentiary hearing and argued for limiting BlueHippo's liability as well limiting his own to the monies he actually received.   Ultimately the district court found Rensin and BlueHippo jointly and severally liable for contempt damages.   Rensin does not appeal that determination and BlueHippo, through its trustee, declined to participate in this appeal.

[4]   The FTC asserted BlueHippo violated the Consent Order in six ways: (1) by misrepresenting that it was in the business of financing computers; (2) by misrepresenting that consumers who qualified for financing would receive computers; (3) by misrepresenting that BlueHippo would ship computers to such customers within four weeks of their qualifying for financing; (4) by misrepresenting that consumers who ordered merchandise through the online store would actually receive the merchandise; (5) by failing to disclose in their store credit policy that consumers needed to pay additional monies to cover shipping and handling fees as well as taxes; and (6) by conditioning the extension of credit on mandatory preauthorized transfers.   Memorandum of Law in Support of Plaintiff's Order to Show Cause at 16–21, *FTC v. BlueHippo,* No. 08cv-1819 (PAC) (S.D.N.Y. Nov. 17, 2009), ECF No. 43.

district court concluded that the FTC "conceded [] it has failed to provide record evidence approximating damages to consumers."

The FTC accepted the court's finding of liability but moved for reconsideration on the issue of damages with respect to the misrepresentations BlueHippo made regarding its store credit policy.[5]   The district court denied that motion, and the FTC initiated this appeal.

## Discussion

On appeal, the FTC asserts that the district court committed an error of law when it: (1) failed to take into account the express language of the Consent Order which establishes the time of injury as the moment the consumers sign up to buy a computer without having received all the material terms of the agreement; (2) failed to apply the presumption of consumer reliance and harm in an FTC civil contempt action; and (3) erroneously concluded that the FTC conceded that it had failed to prove damages associated with misrepresentations and omissions concerning the store credit and refund policy.   We agree with the FTC and join our sister circuits in holding today that the FTC is entitled, when the proper showing has been made, to a presumption of consumer reliance.   Because the district court's opinion and order does not reflect the application of this principle, we vacate the district court's July 27, 2010 order as to damages, and remand for the district court to consider, in the first instance, whether the requirements for this presumption have been met.   Additionally, we agree with the FTC that the appropriate baseline for assessing contempt damages, i.e., the actual loss to consumers as a result of the defendants' contumacious conduct, is the defendants' gross receipts.   That baseline damages calculation is rebuttable, and the district court, on remand, should therefore consider whether defendants have proffered

---

[5]   The FTC does not challenge the district court's denial of recompense for BlueHippo's failure to fulfill 1348 computer orders within a three week time frame, and BlueHippo's conditioning of their extension of credit on mandatory preauthorized transfers.   Appellant's Br. 14–15 n.12.

6

sufficient evidence demonstrating that the baseline consumer loss should be offset and, if so, by how much.

A.     Standard of Review

"We review the district court's conclusions of law de novo and its factual findings for clear error."   *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006).   "We review a finding of contempt under an abuse of discretion standard that is more rigorous than usual . . . ."   *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010) (internal quotation marks omitted).

B.     FTC Civil Contempt Actions

Before addressing the FTC's arguments on appeal, we must answer a threshold question: whether the FTC can seek contempt damages on behalf of consumers when the defendant has violated a lawful Consent Order and Permanent Injunction.   Section 13 of the FTC Act empowers the FTC to seek redress on behalf of injured consumers.   15 U.S.C. § 53; *see FTC v. Figgie Int'l*, *Inc*., 994 F.2d 595, 605 (9th Cir. 1993) (*per curiam*) ("Section 13 serves a public purpose by authorizing the Commission to seek redress on behalf of injured consumers." (internal quotation marks omitted)).   We agree with the Tenth Circuit that "no reason exists to believe Congress intended to withhold the traditional remedy of compensation to those consumers victimized by defendants' violations of [a] Permanent Injunction," or in this case, a Consent Order.   *FTC v. Kuykendall*, 371 F.3d 745, 764 (10th Cir. 2004) (*en banc*); *see also FTC v. Febre*, 128 F.3d 530, 536 (7th Cir. 1997) (noting that a primary purpose of the FTC Act is "to protect consumers from economic injuries").   Accordingly, we think it clear that the FTC may pursue recovery for contempt damages based on alleged violations of a Consent Order.

7

Civil contempt sanctions may either serve "to coerce future compliance" or to remedy any harm caused by noncompliance. *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 302–04 (1947)). A court enjoys broad discretion in setting the amount of coercive sanctions. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004) (citing *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir.1982)). But a court is "not free to exercise its discretion and withhold an order in civil contempt awarding damages, to the extent they are established." *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979). When the FTC seeks damages for contempt, therefore, a court should craft sanctions aimed at least in part on making whole the victims of the contumacious conduct. *Paramedics Electromedicina Comercial*, 369 F.3d at 658 (citing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995)); *see McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949) ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.").

C.    Presumption of Consumer Reliance and Calculating Damages under the Presumption

Although the district court found that BlueHippo had violated the terms of the Consent Order—an issue unchallenged on this appeal—the court limited damages to $609,856.38, rejecting the FTC's damage assessment of $14,062,627.51. The FTC challenges the district court's measure of damages under the circumstances presented here.

The injury to a consumer occurs at the instant of a seller's misrepresentations, which taint the consumer's subsequent purchasing decisions. *Figgie Int'l, Inc.*, 994 F.2d at 606; *FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991) ("To satisfy the reliance requirement in actions brought under section 13(b) of the Act, the FTC need merely show that the

8

misrepresentations or omissions were of a kind usually relied upon by reasonable and prudent persons."); *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000) ("Liability under the FTC Act is predicated upon certain misrepresentations or misleading statements, coupled with action taken in reliance upon those statements."). Put alternatively, because the harm stems from the initial misrepresentations, the injury occurs at the moment the seller makes those misrepresentations. *See Figgie Int'l, Inc.*, 994 F.2d at 606 ("The fraud in the selling . . . is what entitles consumers . . . to full refunds[.]"); *see also McGregor*, 206 F.3d at 1388.

To require proof of each individual consumer's reliance on a defendant's misrepresentations would be an onerous task with the potential to frustrate the purpose of the FTC's statutory mandate. *Sec. Rare Coin & Bullion Corp.*, 931 F.2d at 1316 (noting that it would be impossible for the FTC to provide proof of subjective reliance by each investor); *McGregor*, 206 F.3d at 1388 ("Proof of individual reliance by each purchasing customer is not a prerequisite to the provision of equitable relief needed to redress fraud."). Permitting a presumption of reliance in FTC claims for contempt damages would thus further the Commission's statutory purpose to protect consumers. Noting the inherent difficulty of demonstrating individual harm in FTC cases, the Eighth, Ninth, Tenth, and Eleventh circuits have applied a presumption of consumer reliance that attaches to potential consumers at the instant of the initial misrepresentation. *See, e.g.*, *Kuykendall*, 371 F.3d at 765 (applying presumption in contempt action); *McGregor*, 206 F.3d at 1388 (applying presumption in contempt action); *see also Figgie Int'l, Inc.*, 994 F.2d at 605–06 (applying presumption in FTC Section 19 action); *Sec. Rare Coin & Bullion Corp.*, 931 F.2d at 1316 (applying presumption in FTC Section 13 action). We join these courts and hold that the FTC is entitled to a presumption of consumer reliance upon showing that (1) the defendant made material misrepresentations or omissions that "were of a kind usually

9

relied upon by reasonable prudent persons;" (2) the misrepresentations or omissions were widely disseminated; and (3) consumers actually purchased the defendants' products. *Kuykendall*, 371 F.3d at 765; *see also McGregor*, 206 F.3d at 1388; *Figgie Int'l, Inc.*, 994 F.2d at 605–06; *Sec. Rare Coin & Bullion Corp.*, 931 F.2d at 1316.

Once the FTC makes a showing sufficient to trigger this presumption, the district court must calculate damages to ensure that all of the consumers who were presumed to have relied on the defendant's misrepresentations receive "full compensation." *Kuykendall*, 371 F.3d at 765–66. The Tenth Circuit, in *Kuykendall*, and the Eleventh Circuit, in *McGregor*, held that the total gross receipts from all consumers entitled to compensation should serve as the baseline for calculating the actual loss to consumers caused by the defendants' contemptuous conduct. *See id.*; 206 F.3d at 1387–88; *see also FTC v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009) ("Consumer loss is a common measure for civil sanctions in contempt proceedings and direct FTC actions."). Those courts recognized that when an injury by misrepresentation or omission precedes a purchase, the full amount paid by the injured consumer must serve as the baseline for calculating damages because the "seller's misrepresentations tainted the customer's purchasing decisions," *McGregor*, 206 F.3d at 1388. In this Circuit we have previously characterized monetary loss in an FTC direct action arising out of unfair misrepresentations to consumers as the defendant's "unjust gains." *See FTC v. Bronson Partners*, 654 F.3d 359, 368–69 (2d Cir. 2011); *Verity*, 443 F.3d at 67. Here, in the context of a contempt action arising out of violations of a promise to refrain from misrepresentations concerning material terms or omissions of material terms, we hold that the calculation of the appropriate measure of loss begins with the defendants' gross receipts derived from such contumacious conduct. After the court uses the defendants' gross receipts as a baseline for calculating damages, the court must permit the defendants "to put forth evidence

10

showing that certain amounts should offset the sanctions assessed against them." *Kuykendall*, 371 F.3d at 766.

To the extent that defendants argue that our Circuit precedent suggests rejecting a presumption of consumer reliance, they misconstrue our prior holdings. Defendants rely chiefly on *FTC v. Verity International, Ltd.*, 443 F.3d 48 (2d Cir. 2006), which does not address the presumption of reliance. *Verity* offers little guidance in this case, but insofar as it sheds light on general principles of remedies in FTC cases, it nevertheless bolsters today's holding. In that case, the FTC brought a direct action against internet pornographers who wrongly billed telephone line subscribers for internet access regardless of whether those subscribers had actually accessed the pornographers' websites. We held first that disgorgement, or equitable restitution, was the proper measure of damages. *Id.* at 66. We then adopted a "two-step burden-shifting framework" for calculating disgorgement, which "requires the FTC to first 'show that its calculations reasonably approximated' the amount of the defendant's unjust gains, after which the 'burden shifts to the defendants to show that those figures were inaccurate.'" *Id.* (quoting *Febre*, 128 F.3d at 535). Our holding today adheres to this framework. That we required a different method for calculating disgorgement in *Verity* from that which we are endorsing today merely reflects the material factual disparities between the two cases. *See Verity*, 443 F.3d at 66–69 (explaining that the restitution award in that case should be calculated based on monies actually received, rather than the "full amount lost by consumers," because consumer dollars had passed through a middleman and therefore defendants had not received the full amount consumers paid).

It is undisputed that BlueHippo was permanently enjoined from making material misrepresentations to its customers about its store credit policy, and the Consent Order affirmatively required BlueHippo to disclose all material conditions of their store credit refund

11

policy prior to receiving any money from consumers.[6]   BlueHippo, as the district court found and the defendants do not dispute, violated the Consent Order.   Based on the FTC's proffered evidence, the district court found that during the period of violation 62,673 customers made purchases and 55,892 customers had not been compensated in any form.   The district court noted that at the time of these purchases BlueHippo informed these consumers that if they chose not to have their purchases refunded within seven days of placing their order, they could cancel their order later and obtain usable store credit.   In making these representations, the district court further observed, BlueHippo had conveniently omitted several material caveats accompanying their store credit policy, namely, that store credit could only be used for one online store order at time and could not be applied towards shipping and handling fees or taxes.   Unfortunate customers learned of these restrictions only after trying to use their credit.

This information, if it had been revealed to consumers before they purchased computers from BlueHippo, in all likelihood would have influenced their purchasing decisions.   Although the district court noted these facts, the record does not reveal specifically whether the court applied the presumption of consumer reliance in calculating damages.   Indeed, despite the fact that the FTC's economic expert testified that the 55,892 customers to whom BlueHippo failed to provide either a computer or store merchandise had suffered $14,062,627.51 in damages, the district court

---

[6]   The Consent Order states in pertinent part,

> [Defendants] are permanently restrained and enjoined from . . . [m]aking any representation regarding any refund, cancellation, exchange or repurchase policy without disclosing clearly and conspicuously, prior to receiving any payment from customers all material terms and conditions of any refund, cancellation, exchange or repurchase policy, or if there is a policy of not making any refunds, cancellations, exchanges, or repurchases whatsoever, a statement informing the customer of such policy, prior to receiving any payment from customers[.]

Stipulated Final Judgment and Order of Permanent Injunction at 3–4, *FTC v. BlueHippo*, No. 08cv-1819 (PAC), (S.D.N.Y. April 10, 2008), ECF No. 2.

12

concluded that the FTC conceded it could not prove the credit policy damages. In light of this discrepancy between the FTC's evidence and the court's finding, and in light of our recognizing today a presumption of consumer reliance, the district court erred in not assessing, in the first instance, whether the FTC demonstrated the prerequisite conditions entitling it to a presumption of consumer reliance.

Because the district court did not specifically address the issue in this context, however, we remand to allow that court to determine in the first instance that the FTC has established the presumption appropriately applies on the facts of this case. If the court concludes that the FTC has demonstrated the conditions necessary to establish a presumption of consumer reliance, it should use the defendants' gross receipts as a baseline for calculating the actual loss to consumers caused by defendants' conduct. *Kuykendall*, 371 F.3d at 766. The district court should then give the defendants the opportunity to rebut the determined baseline loss calculation, allowing them to "put forth evidence showing that certain amounts should offset the sanctions assessed against them." *Id.*

## Conclusion

We VACATE that portion of the district court's contempt order that has calculated damages and REMAND the case to the district court for further proceedings consistent with this opinion.