UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of April, two thousand seventeen.

Present:
> PETER W. HALL,
> GERARD E. LYNCH,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges.*

---

FEDERAL TRADE COMMISSION,

> PLAINTIFF - APPELLEE,

> 16-1599-cv

V.

JOSEPH K. RENSIN,

> DEFENDANT - APPELLANT,

BLUEHIPPO FUNDING, LLC, BLUEHIPPO CAPITAL, LLC,

> DEFENDANTS.

---

| | |
|---|---|
| For Appellant: | JOSEPH A. DIRUZZO, III and Jeffrey J. Molinaro, Fuerst Ittleman David & Joseph, PL, Miami, FL |
| For Appellee: | MICHAEL D. BERGMAN and Amanda C. Basta, United States Federal Trade Commission, Washington, DC |

---

1

Appeal from a decision of the Southern District of New York and Judgment entered April 19, 2016 (Crotty, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's decision and judgment are **AFFIRMED**.

The district court imposed compensatory civil contempt sanctions against Joseph K. Rensin ("Rensin"), who controlled BlueHippo Funding, LLC ("BlueHippo"), based on BlueHippo's violation of a Consent Order.[1] The district court denied Rensin's request for discovery from BlueHippo's Bankruptcy Trustee for consumer invoices to demonstrate that consumers in some states who purchased items online with store credit were able to apply their store credit to taxes and shipping and handling. The district court found that these consumer invoices were neither relevant to rebut the Federal Trade Commission's ("FTC") established presumption of reliance nor could they serve as an "offset" of the gross profits baseline. We assume the parties' familiarity with the underlying facts, the procedural history, the arguments presented on appeal, and the district court's rulings.

This Court reviews *de novo* the district court's conclusions of law and its factual findings for clear error. *F.T.C. v. BlueHippo Funding, LLC*, 762 F.3d 238, 243 (2d Cir. 2014). A discovery ruling will be reversed "'only upon a clear showing of an abuse of discretion.'" *Pippins v.*

---

[1] The Consent Order includes a monetary judgment of $3.5 million that BlueHippo is obligated to use to fund a consumer redress program for consumers who made payments on or before February 28, 2006. In addition to the monetary judgment, the Consent Order includes injunctive relief, which prohibits BlueHippo from: (i) making any misrepresentations of material fact, express or implied; (ii) making representations regarding any refunds or cancellations without clearly and conspicuously disclosing all material terms and conditions; and (iii) conditioning the extension of credit on mandatory preauthorized transfers in violation of the [Electronic Fund Transfers Act].

App'x at 369.

*KPMG LLP*, 759 F.3d 235, 251 (2d Cir. 2014) (quoting *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 51 (2d Cir. 2004)).  The Court reviews the district court's award of civil contempt sanctions for abuse of discretion.  *CBS Broad., Inc., v. FilmOn.com, Inc.*, 814 F.3d 91, 100–01 (2d Cir. 2016).

I.     **The Requested Discovery Is Irrelevant to Rebut the Presumption of Reliance or to Establish an Offset**

"[T]he FTC is entitled to a presumption of consumer reliance upon showing that (1) the defendant made material misrepresentations or omissions that 'were of a kind usually relied upon by reasonable prudent persons;' (2) the misrepresentations or omissions were widely disseminated; and (3) consumers actually purchased the defendants' products."  *BlueHippo*, 762 F.3d at 244 (quoting *F.T.C. v. Kuykendall*, 371 F.3d 745, 765 (10th Cir. 2004)).  If the presumption of reliance is established, the district court "must calculate damages to ensure that all of the consumers who were presumed to have relied on the defendant's misrepresentations receive 'full compensation,'" using the defendants' gross receipts as a "baseline for calculating the actual loss to consumers caused by defendants' conduct."  *Id.* at 244, 246 (quoting *Kuykendall*, 371 F.3d at 765–66).  The defendants then have "the opportunity to rebut the determined baseline loss calculation, allowing them to 'put forth evidence showing that certain amounts should offset the sanctions assessed against them.'"  *Id.* at 246; *F.T.C. v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 384 (D. Conn. 2009), *aff'd*, 654 F.3d 359 (2d Cir. 2011) ("The formula for calculating redress for consumer injury is straightforward: '(1) calculate the gross receipts received from all consumers subjected to the contumacious acts of the defendants, (2) offset gross receipts to the extent the defendants prove that consumers either received refunds or were satisfied with their purchases, [and] (3) order the liable defendants to pay the resulting amount . . .'").

Rensin argues that he is permitted to rebut the presumption of reliance with individual instances where a reasonable consumer would not have relied on BlueHippo's misrepresentations. Rensin asserts discovery would "reveal that consumers who completed online purchases from certain states were never charged shipping, handling, and taxes," Appellant's Br. at 15, which shows in certain states a reasonable prudent person would not have thought BlueHippo's policy was applicable, and thus these consumers were not discouraged from using their store credit online for fear of additional charges. Accordingly, Rensin asserts that any consumers in these states should be subtracted from the gross profits baseline as "offsets."

The district court correctly found that Rensin's arguments "mischaracterize the nature of the injury" and that the FTC was entitled to a presumption of reliance. This Court directed that "[t]he injury to a consumer occurs at the instant of a seller's misrepresentations, which taint the consumer's subsequent purchasing decisions," and therefore whether the consumers were or were not charged additional fees for their online purchases with store credit is irrelevant to whether BlueHippo made material misrepresentations of the type "likely to be relied on" by consumers to overcome the presumption of reliance. *BlueHippo*, 762 F.3d at 244. That is, the fact that BlueHippo maintained a policy that was undisclosed to consumers before they entered into installment purchase-agreements with BlueHippo caused injury to the consumer—regardless of whether they were in fact later charged additional fees. *See id*. Accordingly, the district court did not exceed the bounds of its discretion by denying Rensin's discovery request for consumer purchasing invoices because the requested discovery was irrelevant to whether its misrepresentations "'were of a kind usually relied upon by reasonable prudent persons.'" *Id.* (quoting *Kuykendall*, 371 F.3d at 765).

To the extent Rensin requested the discovery to demonstrate an "offset," we find this argument unconvincing. Because the injury occurred at the moment of BlueHippo's misrepresentation to consumers who later entered into installment purchase agreements with BlueHippo, the offsets to the gross profits compensatory baseline take the form of payments already made to compensate the injured consumers. *See BlueHippo,* 762 F.3d at 244. In addition, asking the district court to presume that because some individuals in a state were not charged additional fees somehow reflects that no consumer in that state would have been charged additional fees is not the type of evidence that can be used to establish an offset. *See Bronson Partners, LLC*, 674 F. Supp. 2d at 382 (finding that pure speculation, without actually tracing funding, cannot establish an offset); *F.T.C. v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997) ("[T]he risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty.").

The district court thus acted in accordance with this Court's decision in *BlueHippo.* The FTC was entitled to a presumption of reliance, and the district court did not exceed the bounds of its discretion by denying discovery that was irrelevant to establish offsets. *See BlueHippo*, 762 F.3d at 246.

## II. Rensin's Procedural Due Process Rights Were Not Violated Because He Was Given Notice and an Opportunity to Be Heard

The character and purpose of a sanction, and the relief provided when a sanction is sought, can determine whether the sanction is criminal or civil. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). Criminal sanctions "are intended primarily to punish the contemnor and vindicate the authority of the court." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016). Civil sanctions have two purposes: to coerce compliance with a court order and to compensate a plaintiff, and "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Bagwell*, 512 U.S. at 827; *see also id.* at 831

5

("Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required.").

Rensin's argument that he was entitled to additional process beyond notice and opportunity to be heard in proceedings relating to a compensatory civil sanction issued for violating a Consent Order fails. Rensin relies on *Bagwell* as a primary basis for that argument. *Bagwell*, 512 U.S. at 827. The sanction imposed there, however, distinguishes that case from the one before us. *Bagwell* involved a sanction that arose from the defendant's failure to comply with a complex injunction that required the court to "effectively police[] petitioners' compliance with an entire code of conduct that the court itself had imposed." *Id.* at 831, 837. Furthermore, the *Bagwell* Court classified the contempt order there as a criminal contempt order, because it was intended to punish the union's conduct. *See id.* at 837. In reviewing the nature of the sanction, the Supreme Court determined that the parties did not assert that the sanction was compensatory, and did not present evidence regarding injury or request compensation. *Id.* at 834. The Court, moreover, did not disturb the courts' ability to issue contempt orders with respect to compensatory fines, noting that "[o]ur decision concededly imposes some procedural burdens on courts' ability to sanction widespread, indirect contempts of complex injunctions through noncompensatory fines. Our holding, however, leaves unaltered the longstanding authority of judges to adjudicate direct contempts summarily, and to enter broad compensatory awards for all contempts through civil proceedings." *Id.* at 838.

We conclude that the sanction imposed here is a civil compensatory sanction because its purposes are to disgorge from BlueHippo money received for its behaviors that were in violation of the Consent Order and to compensate customers who entered into the installment purchase agreements under false pretenses. The compensatory nature of the sanctions was demonstrated throughout the district court proceedings: (1) The FTC expressly sought damages

to compensate consumers; (2) in Rensin's proffered evidence to rebut the baseline gross profits calculated by the district court, Rensin marshaled evidence showing payments made to compensate customers; and (3) the final judgment stated that the award was for compensatory contempt relief. In addition, the sanction did not arise out of the violation of a complex injunction, *see id.* at 837, but rather one that prohibited BlueHippo from making representations about its "refund, cancellation, exchange or repurchase policy without disclosing clearly and conspicuously, prior to receiving any payment from customers all material terms and conditions of any refund, cancellation, exchange, or repurchase policy." Thus, the consent order at issue here, simply requiring BlueHippo to represent to consumers in advance of their purchases that their store credit did not apply to taxes or shipping and handling or to multiple online purchases, is unlike the "detailed code of conduct" that was at issue in *Bagwell. See id.* at 831. This Circuit and other Circuits, moreover, have repeatedly held that in the context of compensatory sanctions, providing notice and an opportunity to be heard satisfies due process. *See, e.g., Jacobs v. Citibank, N.A.*, 318 F. App'x 3, at *4-5 (2d Cir. 2008) (summary order); *Kuykendall*, 371 F.3d at 754; *F.T.C. v. Leshin*, 719 F.3d 1227, 1235 (11th Cir. 2013); *Ahearn ex rel. N.L.R.B. v. Int'l Longshore and Warehouse Union, Locals 21 and 4*, 721 F.3d 1122, 1129–30 (9th Cir. 2013).

Here, there is no question that Rensin was afforded notice and an opportunity to be heard. Rensin briefed and argued his position before the district court, this Court, and then again before the district court on remand. The district court considered Rensin's arguments, reduced the gross profits baseline by two offsets proposed by Rensin, and wrote a well-reasoned decision denying Rensin's discovery request. In light of this, Rensin received the process that he was due.

7

We have considered Rensin's remaining arguments and find them to be without merit.

Accordingly, the district court's decision and judgment are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk